# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **ANTONIO PEREGRINO LUJAN,** | ) | |
| Plaintiff | ) | Civil Action No.: 7:06cv00748 |
| | ) | |
| v. | ) | |
| | ) | |
| **C.O. TETERS, et al.,** | ) | **MEMORANDUM OPINION** |
| Defendants | ) | By: PAMELA MEADE SARGENT |
| | ) | United States Magistrate Judge |
| | ) | |

This case is before the court on the defendants' motions for summary judgment, ("the Motions"), (Docket Item Nos. 40, 44, 47, 55).[1] The court granted a motion by the plaintiff to extend the time to respond to the Motions until November 14, 2007.[2] (Docket Item No. 62). On November 6, 2007, the plaintiff filed a Motion for Evidences in an attempt to respond. (Docket Item No. 63). Because the plaintiff is proceeding pro se and is incarcerated, this Motion for Evidences will be considered a response to the defendants' Motions. *See Haines v. Kerner*, 404 U.S. 519 (1972) (holding that pleadings filed by a pro se prisoner litigant in civil actions are to be liberally construed). Thereafter, on November 26, 2007, the defendants filed a Reply. (Docket Item No. 64.) Jurisdiction over this matter is based upon 28 U.S.C. § 1331. The case is before the undersigned magistrate judge by consent of the parties pursuant

---

[1] The defendants filed two motions to dismiss, (Docket Item Nos. 40, 44), but pursuant to Federal Rule of Civil Procedure 12(b), these motions will be converted into motions for summary judgment and disposed of as provided in Federal Rule of Civil Procedure 56.

[2] The court previously granted two additional motions for extension filed by the plaintiff. (Docket Item Nos. 46, 53.)

-1-

to 28 U.S.C. § 636(c)(1). Based on my review of the evidence provided and the arguments and representations of the parties, and for the reasons set forth below, I will grant the defendants' Motions.

## *I. Facts*

The plaintiff, Antonio Peregrino Lujan, a prisoner who previously was incarcerated in United States Penitentiary Lee County, ("USP Lee"), in Lee County, Virginia, brings this action against the defendants, Correctional Officers Kenneth Teters, Gerald Varner, John Gilley, John Webb, Mark Stapleton and William Cochran. In his Complaint and Amended Complaint, Lujan seeks damages under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that the defendants failed to protect him from an assault by other inmates and denied him access to medical treatment in violation of the Sixth, Eighth and Fourteenth Amendments. (Amended Complaint, (Docket Item No. 3), at 5.) Lujan is seeking compensatory and punitive damages in the amount of $1,000,000. (Amended Complaint at 6.) He is suing the defendants in both their official and individual capacities. (Amended Complaint at 3.)

Through his Amended Complaint and affidavit, Lujan alleges that on June 6, 2004, at approximately 10:30 a.m., he was being escorted by Correctional Officer Varner from the recreation yard back to his cell in the C-range of the Special Housing Unit, ("SHU"), at USP Lee. (Attachment 1 to Amended Complaint, ("Statement of Claims"), at 3-4.) He claims that before Varner placed him back into his cell, Varner placed handcuffs on his cellmate, who did not go to the recreation yard, as was

standard procedure. (Statement of Claims at 3.) Lujan claims that Varner neglected to signal to Teters, who was in control of opening and closing the cell doors electronically, to open his cell door. (Statement of Claims at 3-4.) Instead, Lujan claims that Varner and Teters waited until two other inmates, Garcia and Jaramillo, members of a gang called the Texas Syndicate, approached his cell and were "within striking distance" before the cell door was finally opened. (Statement of Claims at 4.) Lujan contends that Varner and Teters knew that he and his cellmate did not get along with members of this gang, and that rivalry and hostility existed between them. (Statement of Claims at 4.) Lujan contends that, as soon as he entered his cell, Garcia rushed in behind him and began attacking him, repeatedly pounding him about the face and head area. (Statement of Claims at 4.) He claims that Garcia had a sock wrapped around his fist to protect his knuckles, evidencing that the attack was planned. (Statement of Claims at 5.) Lujan claims that he yelled for help from the correctional officers, but they, instead, allowed Jaramillo to rush into the cell as well and begin attacking his cellmate. (Statement of Claims at 4.) Lujan claims that neither Garcia nor Jaramillo was handcuffed during these attacks. (Statement of Claims at 4.) He claims that the officers closed the cell door behind Garcia and Jaramillo and allowed the attack to occur. (Statement of Claims at 4.) Lujan alleges that the officers did not intervene until he and his cellmate were severely beaten for at least five minutes. (Statement of Claims at 4-5.) He claims that when the attack ended, Garcia and Jaramillo were allowed to "nonchalantly" walk out of the cell, evidencing complicity by the defendants. (Statement of Claims at 5.) Lujan claims that he did not receive medical treatment until at least 20 minutes after the assault ended. (Statement of Claims at 5.) He contends that, at that point, he was close to blacking out from pain and blood loss. (Statement of Claims at 5.) Lujan further

contends that he received stitches to his head as a result of the assault, and that he has sustained serious and permanent injuries, including loss of vision in the right eye due to a detached retina which required surgical repair and migraine headaches, maladies he did not suffer before the assault. (Statement of Claims at 5-6.) Finally, Lujan claims to have suffered psychological harm as a result of this assault, including fearing for his life and nightmares. (Statement of Claims at 6.) Lujan claims that all of the defendants were present at some time during the attack and did nothing to prevent it or stop it once it began. (Statement of Claims at 6.)

The defendants do not dispute that Lujan was an inmate at USP Lee on June 6, 2004. (Answer to Amended Complaint, (Docket Item No. 39), ("Answer"), at 1.) The defendants also do not dispute that Lujan and his cellmate were attacked by Garcia and Jaramillo on June 6, 2004. (Answer at 1.) The defendants do dispute, however, that they simply allowed the assault to occur and that, once the assault began, their actions were unreasonable given the circumstances. (Answer at 2.) In particular, the defendants claim that as Varner[3] was escorting Lujan back to his cell from the recreation yard, Garcia and Jaramillo were being escorted by officers Webb and Cochran, respectively. (Answer at 2.) After Lujan's cellmate was restrained, Webb signaled for Teters to electronically open Lujan's cell door. (Answer at 2.) As Lujan entered his cell, Teters began to close the cell door standard to established protocol. (Answer at 2.) As Lujan's cell door was closing, Garcia "slipped" from his restraints and was able to enter Lujan's cell before the door closed. (Answer at 2.) Upon entering the cell, he began assaulting Lujan. (Answer at 2.) Then, Jaramillo

---

[3]Although the Answer states that Webb was escorting Lujan back to his cell, it is clear from the other documents filed with the court that this is simply a typographical error.

"slipped" from his restraints as well, struck Webb, injuring him, and forcibly entered Lujan's cell before the door fully closed, assaulting Lujan's cellmate. (Answer at 2.) The defendants admit that there was a brief period while Lujan's cell door was closed that they were unable to enter his cell. (Answer at 2.) However, they deny that it remained closed so that the assault could occur. (Answer at 2.) Instead, five of the six defendants specifically testified in affidavits that they were trained to evaluate an assaultive situation and to observe their surroundings before jumping into a potentially dangerous and violent situation. (Attachment 1 to Docket Item No. 56, Declaration of John Gilley, ("Gilley Declaration"), at 2; Attachment 2 to Docket Item No. 56, Declaration of John Webb, ("Webb Declaration"), at 3; Attachment 3 to Docket Item No. 56, Declaration of Kenneth Teters, ("Teters Declaration"), at 2; Attachment 7 to Docket Item No. 56, Declaration of Gerald Varner, ("Varner Declaration"), at 2; Attachment 8 to Docket Item no. 56, Declaration of Mark Stapleton, ("Stapleton Declaration"), at 1.) They testified that they were trained not to expose themselves to personal injury while inmates are fighting unless and until they have sufficient staff and equipment on scene to restore order. (Gilley Declaration at 2; Webb Declaration at 3; Teters Declaration at 2; Varner Declaration at 2; Stapleton Declaration at 1.) They further testified that it would have been dangerous to have opened Lujan's cell door prior to sufficient staff responding to the SHU to provide assistance in quelling the situation. (Gilley Declaration at 2; Webb Declaration at 3; Teters Declaration at 2; Varner Declaration at 2; Stapleton Declaration at 1-2.) They testified that body alarms were immediately activated, and that staff immediately made an emergency call by radio for additional staff to respond to the SHU to provide assistance. (Gilley Declaration at 1; Webb Declaration at 2; Teters Declaration at 1; Varner Declaration at 2; Stapleton Declaration at 1;

Attachment 9 to Docket item No. 56, Declaration of William Cochran, ("Cochran Declaration"), at 2.) Gilley testified that because Garcia and Jaramillo were armed with handcuffs, it was simply too dangerous to enter Lujan's cell until sufficient personnel arrived. (Gilley Declaration at 2.) They stated that as soon as sufficient personnel did arrive, they entered Lujan's cell and restrained Garcia and Jaramillo on the floor before removing them. (Gilley Declaration at 2; Webb Declaration at 2; Varner Declaration at 3; Cochran Declaration at 2.) Moreover, Gilley, Webb and Cochran testified that they gave direct orders to Garcia and Jaramillo to stop the assault. (Gilley Declaration at 1; Webb Declaration at 2; Cochran Declaration at 2.) They all claim that they acted in good faith in responding to the assault. (Gilley Declaration at 2-3; Webb Declaration at 2-3; Teters Declaration at 2; Varner Declaration at 2-3; Stapleton Declaration at 1-2; Cochran Declaration at 2.) Contrary to Lujan's claim, Webb alleges that the attack lasted only approximately 30 seconds. (Webb Declaration at 2.)

Lujan's medical records show that he received "minor first aid" from a registered nurse approximately 20 minutes following the assault. (Attachment 5 to Docket Item No. 56 at 1.) His records further show that he suffered some lacerations and abrasions, as well as a reddened and swollen right knee. He received nine stitches in his head to repair his wounds. (Attachment 5 to Docket Item No. 56 at 1.)

## *II. Analysis*

As stated above, this matter is before the court on the defendants' motions for summary judgment. The defendants argue that summary judgment should be entered

-6-

in their favor on the following grounds:

> 1. Plaintiff suffered no more than *de minimis* injuries as a result of the assault;
> 2. Defendants did not merely stand by and allow the attack to occur, but acted reasonably in the circumstances and in accordance with their training;
> 3. Plaintiff's claims are barred by the applicable statute of limitations period and equitable tolling should not apply; and
> 4. The defendants are entitled to qualified immunity from the claims brought against them in their individual capacities.

(Defendants' Memorandum Of Law In Support Of Their Motion To Dismiss, ("Defendants' Brief"), (Docket Item No. 40), at 2-8; Defendant's Memorandum Of Law In Support Of His Motion To Dismiss, ("Defendant's Brief"), (Docket Item No. 44), at 2-8; Defendant's Memorandum In Support Of The Motion For Summary Judgment, ("Defendant's Memo"), (Docket Item No. 48), at 2-6; Defendant's Memorandum In Support Of The 2nd Motion For Summary Judgment, ("Defendant's 2nd Memo"), (Docket Item No. 56), at 5-12.)

Pursuant to Federal Rule of Civil Procedure 56(c), the court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986); *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990)(en banc), *cert denied*, 498 U.S. 1109 (1991); *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587; *Nguyen v. CNA Corp.*, 44 F.3d 234, 237 (4th Cir. 1995); *Miltier v. Beorn*, 896 F.2d 848, 852 (4th Cir. 1990); *Ross*, 759 F.2d at 364. In other words, the nonmoving party is entitled "to have the credibility of his evidence as forecast assumed." *Miller*, 913 F.2d at 1087 (quoting *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir. 1979)). Therefore, in reviewing the defendants' summary judgment motions, the court must view the facts and inferences in the light most favorable to the plaintiff.

I first note that the defendants are not subject to suit in their official capacities for monetary damages. *See Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002) (citing *Randall v. United States*, 95 F.3d 339, 345 (4th Cir. 1996); *see also Reinbold v. Evers*, 187 F.3d 348 (4th Cir. 1999). The plaintiff's Amended Complaint, however, clearly states that he is suing each defendant in both their official and individual capacities. (Amended Complaint at 3.) That being the case, I will dismiss Lujan's claims against the defendants for monetary damages in their official capacities.

-8-

As to the defendants' argument that Lujan's claims are barred by the applicable statute of limitations period, for the following reasons, I agree. First, there is no statute of limitations period for *Bivens* actions. Instead, the court must look to the most analogous state law statute of limitations period. *See Wilson v. Garcia*, 471 U.S. 261, 266-70 (1985) (holding that a state's personal injury statute of limitations period is most appropriate for § 1983 actions). It has clearly been held that, for purposes of the statute of limitations, *Bivens* actions are considered personal injury claims and are governed by the personal injury statute of limitations and tolling laws in the state where the alleged injury occurred. *See Smith v. Bledsoe*, 2007 WL 152117, *2 (W.D. Va. Jan. 16, 2007) (citing *Blanck v. McKeen*, 707 F.2d 817, 819 (4th Cir. 1983)). Here, Lujan's alleged constitutional violations occurred in Virginia at USP Lee. Virginia has a two-year statute of limitations period for general personal injury claims. *See* VA. CODE ANN. § 8.01-243(A). Thus, a plaintiff bringing a civil rights action under *Bivens* in Virginia must do so within two years from the time when his action accrues.

While the statute of limitations period and accompanying tolling law is derived from the applicable state law, accrual of the statute of limitations period is governed by federal law. *See Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995). The court in *Nasim* held that "[u]nder federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." 64 F.3d at 955 (citing *United States v. Kubrick*, 444 U.S. 111, 122-24 (1979)); *see also Gould v. U.S. Dep't of Health & Human Servs.*, 905 F.2d 738, 742 (4th Cir. 1990). An inmate's action is commenced for statute of limitations purposes when he delivers his complaint to

prison authorities for mailing. *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735 (4th Cir. 1991).

Here, the assault resulting in Lujan's alleged constitutional violations occurred on June 6, 2004. Therefore, it is clear that Lujan "possesse[d] sufficient facts about the harm done to him that reasonable inquiry [would] reveal his cause of action" on that day. *Nasim*, 64 F.3d at 955. It is not entirely possible to tell exactly when Lujan delivered his Complaint to prison authorities for mailing. However, the Complaint is dated December 14, 2006, and was filed in the clerk's office on December 21, 2006. Therefore, it can be inferred that Lujan delivered his Complaint to prison authorities sometime between those two dates. However, since the assault occurred on June 6, 2004, and the applicable statute of limitations period is two years, Lujan had until only June 6, 2006, to commence his action against the defendants. He failed to do so and, instead, filed his Complaint more than six months after the expiration of the appropriate limitations period.

Despite the untimeliness of his Complaint, Lujan contends that the statute of limitations period should be equitably tolled. The statute of limitations generally will not be tolled when the plaintiff has slept on his or her rights, but only when he or she has been prevented from asserting them. *See Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 555 (1974). As a general rule, "[s]tatutes of limitations are strictly enforced and exceptions thereto are narrowly construed. Consequently, a statute should be applied unless the General Assembly clearly creates an exception, and any doubt must be resolved in favor of the enforcement of the statute." *Finnerty v. Thornton Hall, Inc.*, 593 S.E.2d 568, 574 (Va. Ct. App. 2004) (quoting *Arrington v. Peoples Sec. Life*

-10-

*Ins.*, 458 S.E.2d 289, 290-91 (Va. 1995)). Pursuant to Virginia Code Annotated § 8.01-229(D), a statute of limitations is tolled when a defendant uses any direct or indirect means to obstruct the filing of an action. In *Grimes v. Suzukawa*, 551 S.E.2d 644, 646 (Va. 2001), the Virginia Supreme Court held that "[a] plaintiff who seeks to rely upon the tolling provision in Code § 8.01-229(D) must establish that the defendant undertook an affirmative act designed or intended, directly or indirectly, to obstruct the plaintiff's right to file [his] action." (Citations omitted.)

Lujan contends that he "cannot be held accountable for the BOP's negligence and failure to follow up on the Administrative remedy process, of which claimant cannot proceed with his claim until such process is complete." (Statement of Claims at 7.) The Federal Bureau of Prisons' Administrative Remedy Program is set forth in Program Statement 1330.13, codified in Title 28 of the Code of Federal Regulations. According to that Program Statement, with certain exceptions not applicable here, an inmate must first present an issue of concern informally to staff on a BP-8 form. *See* 28 C.F.R. § 542.13(a). The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate BP-9 form, is 20 calendar days following the date on which the basis for the Request occurred. *See* 28 C.F.R. § 542.14(a). An inmate who is dissatisfied with the warden's Response to a BP-9 may submit an Appeal, on the appropriate BP-10 form, to the appropriate Regional Director within 20 calendar days of the date the warden signed the Response. *See* 28 C.F.R. § 542.15(a). An inmate who is dissatisfied with the Regional Director's Response may submit an Appeal, on the appropriate BP-11 form, to the General Counsel within 30 calendar days of the date the Regional Director signed the Response. *See* 28 C.F.R. § 542.15(a). Appeal to the

General Counsel is the final administrative appeal. *See* 28 C.F.R. § 542.15(a).

The various attachments filed with the pleadings demonstrate that Lujan filed a BP-8 informal grievance form following the incident. According to the regulations governing the prison administrative remedy process, he had 20 days from the date of the assault to file both the BP-8 and the BP-9. *See* 28 C.F.R. § 542.14(a). Lujan filed the BP-9 on June 1, 2005, nearly one year following the assault. It was, nonetheless, accepted by prison authorities. In the BP-9 filed with Warden B.A. Bledsoe, Lujan asked for any information regarding the resolution of his claim. (Exhibit 4 to Amended Complaint.) Warden Bledsoe responded on June 9, 2005, stating that the matter had been referred to the appropriate department and/or agency for investigation. (Exhibit 4 to Amended Complaint.) The warden further informed Lujan that, due to the sensitive nature of the allegations, some of the findings might not be disclosed. (Exhibit 4 to Amended Complaint.) His Request for Administrative Remedy was denied, and he was informed of his right to appeal the decision within 20 calendar days. (Exhibit 4 to Amended Complaint.) On July 25, 2005, more than 20 calendar days later, Lujan filed his appeal with K.M. White, the Regional Director, again asking for information regarding his claim. (Exhibit 3 to Defendant's Memo.) Again, Lujan's untimely appeal was accepted. On October 13, 2005, White denied Lujan's appeal of the Warden's Response, advising him once again that the matter had been referred to the appropriate department and/or agency for investigation and had been found to be without merit. (Exhibit 3 to Defendant's Memo.) Lujan was advised of his right to appeal this denial within 30 calendar days to the General Counsel for the Federal Bureau of Prisons. (Exhibit 3 to Defendant's Memo.) On November 2, 2005, Lujan timely appealed the denial. (Exhibit 5 to

Amended Complaint.) By response dated January 31, 2006, Harrell Watts, Administrator of Inmate Appeals, again denied Lujan's appeal, stating that the matter had been referred to the appropriate agency and/or department for investigation. (Exhibit 5 to Amended Complaint.) Lujan's own filings with the court show that he received this denial prior to February 14, 2006, more than three months before the expiration of the limitations period.[4]

Thereafter, on July 4, 2006, Lujan wrote a letter to Watts, explaining that, as of February 14, 2006, he was transferred from USP Lee to United States Penitentiary Atwater, ("USP Atwater"), in California. (Exhibit 6 to Amended Complaint.) He stated that he was in transfer for seven weeks and had just recently gotten settled into USP Atwater. (Exhibit 6 to Amended Complaint.) He stated that he had hoped that his mail would catch up to him, but he had not received a response to his BP-11, and asked that Watts inform him of any known disposition. (Exhibit 6 to Amended Complaint.) On August 28, 2006, Lujan again wrote to Watts with the same request. (Exhibit 7 to Amended Complaint.) On October 25, 2006, Lujan wrote to Harley G. Lappin, the Director of the BOP, stating that his attempts at using the administrative remedy process had been "thwarted." (Exhibit 8 to Amended Complaint.) He asked Lappin for advice or information. (Exhibit 8 to Amended Complaint.) On November 25, 2006, Lujan wrote to Watts, regarding his office's failure to respond to the July 4, 2006, letter. (Exhibit 9 to Amended Complaint.) He again informed Watts of his transfer to USP Atwater, and expressed his concern that he might have missed a reply

---

[4]While it is unclear from the record before the court the exact date that Lujan received Watts's January 31, 2006, Response, thereby concluding the Administrative Remedy Process, it can be gleaned from Lujan's July 4, 2006, letter to Watts that he received it some time prior to February 14, 2006, when he was transferred to USP Atwater. (Exhibit 6 to Amended Complaint.)

-13-

from Lappin because of it. (Exhibit 9 to Amended Complaint.) He again requested that he be informed of the disposition of his claim. (Exhibit 9 to Amended Complaint.)

Despite Lujan's claim that his attempts at the administrative remedy process have been "thwarted," the Regional Director, on October 13, 2005, clearly informed Lujan that his claim had been found to be "without merit." (Exhibit 4 to Amended Complaint.) At that time, Lujan still had approximately eight months until the expiration of the two-year statute of limitations period. Of course, Lujan had to exhaust his administrative remedies before he could initiate his *Bivens* action against the defendants. Based on the documents before the court, it is clear that Lujan exhausted his administrative remedies on January 31, 2006, when Watts, the Administrator of Inmate appeals, denied Lujan's appeal of the Regional Director's decision. (Exhibit 5 to Amended Complaint.) Thus, once Lujan exhausted his administrative appeals, he still had more than four months to initiate his claim. However, instead of initiating his *Bivens* action against the defendants, Lujan wrote additional letters to Watts and Lappin asking for the disposition of his claim, even though he already had been informed of the disposition on October 13, 2005.

I cannot find that equitable tolling of the statute of limitations period is appropriate under these circumstances. Instead of being affirmatively prevented from asserting his rights, Lujan has simply slept on his rights. *See Am. Pipe & Const. Co.*, 414 U.S. at 555. There is no evidence that the defendants used any "direct or indirect means to obstruct the filing of [the] action." VA. CODE ANN. § 8.01-229(D). That being the case, I find that Lujan's claims are barred by the two-year statute of

limitations.

The defendants also claim that they are immune from suit based on qualified immunity grounds. However, given the court's finding that Lujan's claim is barred by the statute of limitations period, I find it unnecessary to discuss this argument in this Memorandum Opinion. Likewise, I find it unnecessary, given this disposition, to discuss the merits of Lujan's claims.

Based on the above-stated reasons, an appropriate order dismissing all of Lujan's claims against the defendants will be entered.

ENTER: December 14, 2007.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE